JAMES O'MARROW ET AL. v. CITY OF PORT HURON.

*Trial—Evidence to support disconnected counts—Approval of bond.*

Where a declaration sets up distinct and unconnected causes of action, as by counting on successive official bonds given by defendant upon different appointments to the same office, there must be evidence specifically applicable to any particular count to sustain a recovery upon it.

The Charter of Port Huron requires the City Marshal's bond to be accepted and approved by the Common Council. *Held,* where the council, instead of passing on the bond, ordered it to be handed to the mayor for his decision and the mayor refused to consider it and handed it back to the clerk with the direction to put it on file, that there was no such acceptance and approval as would make the bond a binding obligation on the sureties.

Error to St. Clair. Submitted Jan. 18. Decided Jan. 25.

Assumpsit. Defendants bring error. Reversed.

*Frank Whipple* and *A. E. Chadwick* for plaintiffs in error.

City Attorney *Elliott G. Stevenson* for defendant in error.

Graves, C. J. In May, 1874, the common council of the city of Port Huron appointed O'Marrow to be marshal and on the 10th of August following he was notified that the council had fixed his official bond at $15,000 and that he was required to prepare and present it, and he accordingly tendered a bond bearing date August 14, 1874, and executed by himself as principal and by John S. Botsford and William Stewart, now deceased, as sureties, and the common council accepted and approved it.

September 22, 1874, the mayor proceeding under authority conferred upon him by the charter (section 7, ch. 3, Sess. L., 1869, vol. 3, p. 1477) removed the marshal from office. But on the 12th of the succeeding October the common council reappointed him and caused him to be notified to file a bond under such appointment in the same sum as the first on or before the 22d of the month. In obedience to this requirement he gave a bond with the same sureties under date of October 14, 1874, and it was reported the same day to the common council.

October 19, 1874, the mayor removed him a second time. But at their sitting in the evening of the same day the common council again reappointed him and caused him to be notified to file a bond under such appointment in the sum of $15,000 on or before the 31st of October, 1874.

O'Marrow proceeded under date of October 22, 1874, to give a bond in the required amount and with the same sureties and left it in the hands of the clerk, and on the 10th of November following it was submitted to the common council and they merely passed an order referring it to the mayor for his approval.

This suit was brought in August, 1875, on the three bonds. The declaration contained three separate counts— the first being on the bond of August, the second on the bond dated October 19, and the third on the bond dated the 22d of October. Hence there were three distinct and unconnected causes of action set up, and to authorize a recovery on either it was necessary to give evidence distinguishably applicable to it. The causes of action were not blended and neither one could be maintained by wholesale testimony not capable of specific application.

It is not necessary to recite the obligations averred and the breaches assigned in the first and second counts, because whether good or bad the allegations were not followed up by evidence. This is very properly admitted by the counsel for the city. The first two bonds are, therefore, out of the case, and nothing remains but the third to afford any color for a recovery.

At the close of the evidence the circuit judge ordered a verdict on the whole record in favor of the city for $1624.17.

There are several difficulties of a serious nature in the case, but that which is most conspicuous, and unless removed, apparently the most inveterate, is whether the third bond ever became a binding obligation. For the plaintiffs in error it is insisted that it was necessary that the common council should accept and approve it; and that they not only did not accept and approve, but distinctly refused. On the part of the city it is conceded that there was no express and formal acceptance and approval, but the ground is taken that the facts implied those operations.

In this connection it may be observed that the circuit judge refused to take the sense of the jury on the circum-

stances relied on to warrant this implication and assumed to pass on the evidence for himself and draw his own conclusions in matter of fact as well as in matter of law. But waiving all question whether there was impropriety in this practice, we pass to the inquiry whether, as claimed by the city, the bond in any view of the case was virtually accepted and approved.

The city charter contemplates that such bonds shall be accepted and approved by the common council. Ch. ·3, §§ 15, 18, 20, 21. The mode of proceeding is not pointed out. But whatever it may be it ought to carry with it some action sufficient to express in an affirmative manner the assent and approbation of the body. As suggested formerly, O'Marrow left the bond with the city clerk to be presented to the common council for their action in accordance with the charter and for no other purpose. The clerk presented it. But they neither accepted nor approved it. The subject did not escape their attention, because instead of signifying that the instrument was satisfactory or the contrary, they ordered that it should be handed over to the mayor for his decision.

This was a very unusual proceeding and it goes far to suggest that it had its origin in a state of feeling which had grown up between the mayor and the council in regard to this office. But the motives are immaterial. The action thus taken by the council was tantamount to saying that they did not accept and approve the bond. But this is not all. The mayor did not. When the clerk placed the paper in his hands he expressly refused to give it his countenance, and handed it back with the observation to put it on file. The clerk then placed it among the files in his office, which he might have done spontaneously with equal effect, and there it remained. In view of these circumstances it is not possible to say that the instrument ever became an obligation according to the provisions of the charter and binding on the sureties. It is not alone that the statutory tokens of reciprocal assent are wanting. The facts suggest a virtual refusal.

The case of *People v. Johr* 22 Mich. 461, cited for the city, is not in point. The question there was whether the Auditor General had accepted and approved Johr's bond as county treasurer, and the evidence was positive that he had and there were no circumstances of a contrary tendency. The court considered that he might have refused to accept the bond and might thereupon have precluded Johr from proceeding as county treasurer to make the tax sales, on the ground that the prosecuting attorney and one of the circuit court commissioners had not acted on the question of approval. But as he had declined to take advantage of that incident and had accepted the bond and given it his approval and had allowed Johr to act on the strength of it and the latter had concurred with the Auditor General in treating the bond as well executed and had secured all the benefits which he could have enjoyed under any circumstances, the fact that the prosecuting attorney and one of the two circuit court commissioners had not participated in the proceeding to approve the bond was not an objection, in the opinion of the court, which Johr or his sureties were at liberty to urge against the State. If the Auditor General had distinctly refused to accept and approve the bond and a clerk had then put it away in the office, the resemblance would have been closer.

The other points suggested become unimportant.

The judgment must be reversed with costs and a new trial granted.

The other Justices concurred.